### PEOPLE ex rel. PUTNAM v. PALMER, Superintendent of Utica State Hospital.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

HABEAS CORPUS—COSTS—INSANE PERSON—ILLEGAL COMMITMENT.

Where the superintendent of a state hospital received relator under a court order and an order of the state commission in lunacy, on relator's discharge on habeas corpus because the original order of commitment was void, it was an abuse of discretion to award costs against the superintendent, since he was not responsible in any way for the commitment, though when the writ of habeas corpus issued he did not surrender the re-

lator without delay or investigation; it being his duty to refuse to surrender him until all the questions involved could be judicially determined.
Kruse, J., dissenting.

Appeal from Special Term, Herkimer County.

Habeas corpus proceeding by the people of the state of New York, on the relation of Howard Putnam, against Harold L. Palmer, superintendent of the Utica State Hospital. From so much of the final order as awards costs against defendant personally, he appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

F. H. Cookingham, for appellant.
George H. Bunce, for respondent.

McLENNAN, P. J. It appears that on the 29th day of August, 1898, upon a petition presented to a justice of the Supreme Court, asking for the commitment of the relator, an alleged insane person, to a state institution for the insane, an order was made which directed that the relator be confined as an insane person at Brigham Hall, at Canandaigua, N. Y., a state institution for the care of the insane. Thereafter, and on the 10th day of April, 1899, the state commission in lunacy issued an order directing the superintendent of Brigham Hall to release the relator for transfer and directed that the superintendent of the Utica State Hospital receive him. On the 22d day of April the relator was so received at the Utica State Hospital, and was confined there by virtue of the order of the court and the transfer order of the state commission in lunacy. On or about the 31st day of January, 1907, an unverified petition for a writ of habeas corpus was presented to a justice of the Supreme Court, who, on the 21st day of February, 1907, granted a writ of habeas corpus returnable on the 23d day of February, 1907. A return was duly made, and on that day the relator was produced in court and an order of reference was made. On the 6th day of March, 1907, an amended return was made, and an answer to the amended return made on the same day. On the same day a hearing was had before the referee, the relator was examined in his own behalf, and a motion made for his discharge on the ground that the papers upon which he had been committed were irregular. It was agreed by the parties that the referee should make his report on the question of the regularity of the papers on commitment before the question of insanity was gone into. Thereafter, and on the 3d day of April, 1907, the referee made his report and found that the original order of commitment was void on the ground that the petition was not made by a person authorized by statute to make the same. A final order of discharge was thereupon made and entered, and served on the 6th day of April, 1907, and the relator was released. The order, among other things, awarded costs against the appellant, taxed at $70 and disbursements in the sum of $30.54, making a total of $100.54. From that portion of the order awarding costs against the defendant, this appeal is taken.

It would seem to be unnecessary to consider the question as to whether the court has power in a proceeding of this kind to award

costs. Assuming that the contention of the respondent is right, that the awarding of costs was within the discretion of the court, we think that the order should be reversed because of abuse of discretion. The appellant was a public officer, and so far as appears acted with an honest effort to discharge his duty. The relator was received by him by virtue of a court order and an order of the state commission in lunacy directing the appellant to receive and hold him. The appellant was without discretion in the matter. He was compelled to receive the relator into his custody. The suggestion that when the writ of habeas corpus was issued he did not surrender the relator without delay or investigation it seems to me is wholly untenable. It was his duty, in view of an order of a justice of the Supreme Court directing that the relator be confined as an insane person, and of the order of the state commission in lunacy that the appellant receive him into his custody, to refuse to surrender or discharge him until all the questions involved could be judicially determined; and it was the duty of the defendant by his return to raise and present all questions necessary to a determination of the issues. We think it clear that the defendant in this case did no more than he was in duty bound to do; that he is in no way responsible for the order originally made, which, we may assume, was made without jurisdiction, or for the order of the state commission in lunacy, which directed him to receive the relator. We conclude that that part of the order which awarded costs against the appellant should be reversed, because, under the circumstances, it was abuse of discretion.

Order, so far as appealed from, reversed, with $10 costs and disbursements. All concur; except KRUSE, J., who dissents.

KRUSE, J. (dissenting). For years the relator was wrongfully confined in the Utica State Hospital for the Insane upon a commitment which was void. It was so decided by the Special Term, and with the part of the order so deciding the appellant is content. The infirmity in the order appeared upon the face of the papers committing the relator. The patient had no notice of the proceeding committing him, and the petition was not made by any person whom the law provides may make such a petition. This fact appeared upon the face of the papers, which were delivered to the person in charge of the institution to which the relator was first committed. It appeared upon the copy of the papers which was delivered to the superintendent of the Utica State Hospital, at the time the relator was transferred to that institution. Presumably the superintendent was familiar with the provisions of the statute for committing persons to the hospital for the insane, and beyond that he may call to his aid legal counsel furnished at the expense of the state. Not only may he have recourse to the Attorney General, but special counsel appointed by the state for that purpose. I do not agree with the suggestion that the superintendent was required to receive the relator upon a commitment which was void, and so appeared upon the face of the papers which were delivered to the superintendent. At all events, when the question was raised, it was unnecessary to litigate the matter, or, if it was regarded as necessary

or important that the question should be contested, there is no good reason shown why the relator should not be awarded the costs which he incurred in vindicating his right to be at liberty.

The relator made his claim to the superintendent that he was illegally confined, and drew up a petition, in good form, directed to a justice of the Supreme Court, calling his attention to the fact that he was illegally confined, as he had a right to do. The only reason it was not verified was because there was no officer before whom the relator could go for that purpose. A writ of habeas corpus was issued, directed to the superintendent, who brought the relator before the court. Instead of submitting the matters to the court for its determination upon the papers and order of commitment, the appellant amended his return, which he had previously made, and put in issue the allegation of the petition that the relator was not properly in the custody of the superintendent, and challenging the claim that the commitment and the papers upon which it was made were not sufficient. The matter was referred to a referee, who certified that in his opinion the commitment was void, and this report was confirmed at Special Term, and an order made that the order of commitment adjudging the relator insane is illegal and void, that the relator is unlawfully imprisoned and restrained of his liberty, and ordering his discharge, and requiring the superintendent to pay the costs. It is now proposed to reverse that part of the order awarding costs, upon the ground that it was an abuse of discretion upon the part of the Special Term. I cannot bring myself to the conclusion that there is any justification for interfering with the discretion of the Special Term in that regard. I am well aware that we ought not to sanction any proceeding which will tend to needlessly harass or embarrass the superintendent in the performance of his duties, which are necessarily of a delicate and difficult nature. But I do not think this proceeding is of that character. It is at least equally important that no person be restrained of his liberty or confined except by proper proceedings and process. Very true, mistakes do happen in the making of these orders; but, when attention is called to an infirmity which is so apparent and vital as in this case, it does not seem to me that there should be needless litigation over the matter. At all events, the court at Special Term had the whole matter before it, and, as I think, correctly disposed of the question of costs.

It is not a question of punishing the superintendent, as is suggested by counsel in his behalf. I have no doubt that he acted in good faith. It is rather whether the relator, who has been illegally confined, shall be reimbursed to some extent for the costs incurred by him in freeing himself from illegal imprisonment. Awarding costs against a state officer is not new. It is done every day in unsuccessful suits brought by the commissioner of agriculture, state excise commissioner, comptroller, and other state officers. Such costs are usually paid by the state, and I think the state would ultimately pay these costs. Such a claim seems to come within the spirit, at least, of the provisions of section 46 of the insanity law, which provides for the state paying any just claims for damages against such officer, for which the state would be legally or equitably liable.

I vote for affirmance.